UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KANDY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-436-TAV-CCS |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 14 and 15]. Kandy Johnson ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 12, 2011, the Plaintiff filed an application for disability insurance benefits

("DIB") and supplemental security income ("SSI"), claiming a period of disability which began

December 8, 2010. [Tr. 141, 143]. After her application was denied initially and upon

reconsideration, the Plaintiff requested a hearing. [Tr. 10]. On March 13, 2013, a hearing was

held before an ALJ to review determination of the Plaintiff's claim. [Tr. 34-62]. On May 28,

2013, the ALJ found that the Plaintiff was not disabled. [Tr.13-32]. The Appeals Council

denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final

decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this

Court on September 22, 2014, seeking judicial review of the Commissioner's final decision

under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing

dispositive motions, and this matter is now ripe for adjudication.

## I.      ALJ FINDINGS

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2.   The claimant has not engaged in substantial gainful activity since December 8, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.   The claimant has the following severe impairments: fibromyalgia, obesity, mild lumbar degenerative disc disease and affective mood disorders (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: unlimited push/pull (including hand/foot controls) within exertional limitations[;] may occasionally climb ramps and stairs, but must not climb ladders, ropes, or scaffolds; may occasionally stoop, kneel, crouch, and crawl; may frequently balance; must avoid concentrated exposure to extreme

2

temperatures and vibrations, and avoid all exposure to hazards; able to perform simple and low level detailed tasks with normal work breaks and supervision; and should perform work activities dealing more with objects than with people.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 17, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 416.969m and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 8, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 18-27].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42

3

U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of

financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). A claimant will only be

considered disabled if:

> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not
> disabled.
>
> 2. If claimant is not doing substantial gainful activity, his
> impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is
> suffering from a severe impairment that has lasted or is expected to
> last for a continuous period of at least twelve months, and his
> impairment meets or equals a listed impairment, claimant is
> presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his
> past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his
> past relevant work, if other work exists in the national economy
> that accommodates his residual functional capacity ("RFC") and

4

vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "'absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'" Wilson, 378 F.3d at 546-47 (emphasis omitted) (quoting Connor v. U.S. Civil Serv. Comm'n, 721 F.2d 1054, 1056 (6th Cir. 1983)). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, the claimant "bears the burden of proving his entitlement to benefits." Boyes

6

v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff argues two allegations of error on appeal:  (1) the ALJ applied the incorrect Social Security Ruling when he evaluated the severity of the Plaintiff's fibromyalgia syndrome; and (2) the ALJ failed to properly weigh the opinion evidence of record.  [Doc. 12 at 5-7].

In response, the Commissioner maintains that substantial evidence supports the ALJ's evaluation of:  (1) the effects of the Plaintiff's fibromyalgia; and (2) the Plaintiff's residual functional capacity, including the opinion evidence of record.  [Doc. 15 at 4-3].

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.  Evaluation of Plaintiff's Fibromyalgia Impairment

The Plaintiff contends that the ALJ erroneously evaluated the Plaintiff's allegation of fibromyalgia by assessing the impairment pursuant to Social Security Ruling ("SSR") 99-2p instead of SSR 12-2p. [Doc. 12 at 5].  SSR 99-2p, the Plaintiff argues, deals with chronic fatigue syndrome, whereas SSR 12-2p specifically deals with evaluating claims of fibromyalgia.  [Id. at 5-6].  The Plaintiff contends that had the ALJ examined the Plaintiff's condition under SSR 12-2p, which contains a different test for evaluating claims of fibromyalgia than the test invoked by the ALJ, the outcome would have been different.  [Id. at 6].

The Commissioner acknowledges that SSR 12-2p invokes a second, newer test than the one employed by the ALJ. [Doc. 15 at 4].   However, the Commissioner argues that this second

7

method only addresses whether a claimant's allegation of fibromyalgia constitutes a medically determinable impairment. [Id.]. Because the ALJ found that the Plaintiff's claim of fibromyalgia constituted a severe medical determinable impairment and continued the sequential evaluation, the Commissioner argues that the Plaintiff was not prejudiced or deprived of a substantial right. [Doc. 15 at 5]. The Commissioner further maintains that the Plaintiff's residual functional capacity ("RFC") is supported by substantial evidence because the ALJ considered the entire record and the Plaintiff's subjective complaints of fibromyalgia was only one of the many factors the ALJ weighed when making a RFC determination. [Id.].

In his decision, the ALJ states, "Social Security Ruling 99-2p instructs that for fibromyalgia to be a medically determinable impairment, the diagnosis must comport with the guidelines set forth by the American College of Rheumatologists [("ACR")]." [Tr. 22]. The ALJ goes to explain that the 1990 ACR criteria for the classification of fibromyalgia includes (1) a history of widespread pain, and (2) pain in 11 of 18 tender point sites on digital palpation. [Id.].[1] The ALJ noted that while the Plaintiff was treated for fibromyalgia and testified that her rheumatologist, Michael Lockwood, M.D., tested her for tender points, the record does not reflect said testing. [Id.]. Nonetheless, the ALJ allowed "some benefit of the doubt" and found that the Plaintiff's fibromyalgia was a severe impairment. [Id.]. The ALJ concluded, however, that it was not as debilitating as the Plaintiff alleged. [Id.].

As mentioned above, SSR 99-2p[2] deals with methods for evaluating chronic fatigue syndrome. Soc. Sec. Ruling 99-2p, 1999 WL 271569, at *1 (April 30, 1999). In a footnote, the

---

[1] Not mentioned by the ALJ is the third element of the 1990 ACR criteria, which is "[e]vidence that other disorders that could cause the symptoms or signs were excluded." Soc. Sec. Rul., 2012 WL 3104869, at *3 (July 25, 2012).
[2] The Court notes that SSR 99-2p was rescinded and replaced by SSR 14-1p on April 3, 2014. However, SSR 14-1p similarly states that individuals who suffer from chronic fatigue syndrome "may have co-occurring conditions, such as fibromyalgia." Soc. Sec. Rul., 2014 WL 1371245, at *3 (Apr. 3, 2014).

ruling states that symptoms of chronic fatigue syndrome overlap with symptoms found in fibromyalgia syndrome and that individuals whose impairments meet the ACR criteria for fibromyalgia syndrome may also fulfill the criteria for chronic fatigue syndrome. Id. at *3 n.3. As pointed out by the Plaintiff, SSR 12-2p is the correct ruling to evaluate fibromyalgia, and the Court agrees that the ALJ should have referenced this ruling instead. See Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). However, the criteria used by the ALJ is still correct as it is one of the two methods permitted by SSR 12-2p for diagnosing fibromyalgia. See id. at *2-3. The second method is the 2010 ACR Preliminary Diagnostic Criteria, which states that an individual has a medical determinable impairment of fibromyalgia if he or she: (1) has a history of widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders have been ruled out that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions. Id. at *3. Thus, pursuant to SSR 12-2p, this second test, or the test employed by the ALJ, are both correct for determining whether fibromyalgia is a medically determinable impairment. Accordingly, the Court finds that the ALJ's use of the 1990 ACR criteria was not error.

The Court does, however, take issue with the ALJ's application of the test to the evidence of record for several reasons. First, the ALJ found that the record did not reflect any tender point testing to meet the 1990 ACR criteria. While this may seem of no consequence given that the ALJ nonetheless found the alleged condition was a severe impairment, the lack of testing was consequential to the ALJ's evaluation of the impairment's disabling effect. Specifically, the lack of testing gave the ALJ reason to diminish the Plaintiff's credibility.

For example, because there was supposedly no tender testing done, the ALJ only allowed "some benefit of the doubt" in regard to the Plaintiff's hearing testimony with respect to the

9

impairment [Tr. 22], and her subjective complaints of pain were also discredited, in part, because there were "no adequate supporting examinations establishing disabling fibromyalgia" [Tr. 25]. Contrary to the ALJ's finding that tender point testing is absent from the record, a close review of the evidence reveals that Dr. Lockwood did in fact conduct such an examination and found that the Plaintiff "has at least 16/18 of the classic tender points." [Tr. 287]. Specifically, the Plaintiff exhibited tenderness in her shoulders, elbow, hips, knees, ankles, and back. [Id.]. In fibromyalgia cases, improperly rejecting a claimant's subjective complaints is reversible error. Laxton v. Astrue, No. 3:09-CV-49, 2010 WL 925791, at *12 (E.D. Tenn. Mar. 9, 2010) ("A fibromyalgia sufferer's RFC simply cannot be accurately determined without proper consideration of his own statements. Thus, if the ALJ erroneously rejects the claimant's statements as incredible, the entire RFC determination is flawed."). Accordingly, the Court finds that several of the ALJ's reasons for finding the Plaintiff less than fully credible are not supported by substantial evidence.

Second, and also troublesome to the Court, is that SSR 12-2p provides that "[w]hen a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." 2012 WL 3104869, at *3. Dr. Lockwood is not only an acceptable medical source, but he is also a treating physician. See 20 C.F.R. §§ 404.1502, 404.1513(a)(1), 416.902, 416.913(a). Dr. Lockwood treated the Plaintiff's fibromyalgia for at least two years [Tr. 273-88, 456-58, 528-33], yet the ALJ's decision does not reference his diagnosis or long-term treatment of the Plaintiff at all. The ALJ only recognizes that "[d]octors treated [the Plaintiff] for fibromyalgia . . . ." [Tr. 22]. The Court questions how well the ALJ examined the treatment records seeing as how Dr. Lockwood's tender test was overlooked.

10

While Dr. Lockwood did not provide an opinion in this case and the ALJ certainly is not required to comment on all the evidence in the record for his decision to stand, the Court finds it disconcerting that an ALJ can evaluate the limiting effects, or lack thereof, of fibromyalgia without discussing the medical source that specifically treated the Plaintiff's malady.

Fibromyalgia has consistently been characterized as an "elusive" or "mysterious" disease because it cannot be conclusively confirmed by objective medical tests like most physical impairments. Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 916 (7th Cir. 2003) (quotation omitted); see Rogers, 486 F.3d at 243–44 (noting that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Consequently, disability claims based on fibromyalgia "are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 862 (6th Cir. 2011) (emphasis in the original). As a result, this District has recognized that "the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance" in fibromyalgia cases. Webster v. Colvin, No. 3:13-CV-497-TAV-HBG, 2014 WL 4095341, at *6 (E.D. Tenn. Aug. 19, 2014).

Dr. Lockwood's records document a history of treatment for widespread pain and repeated manifestation of classic fibromyalgia symptoms, including fatigue, memory problems, depression, and anxiety. [Tr. 273-88, 456-58, 528-33]. Additionally, these records contain more than a recitation of the Plaintiff's subjective complaints of pain; they demonstrate how the Plaintiff's symptoms interfered with her ability to work and participate in other activities over time, as well as recommendations from Dr. Lockwood about the Plaintiff taking leave under the

11

Family Medical Leave Act and obtaining disability from her employer. [Tr. 279-88]. The Court finds these "longitudinal records . . . are especially helpful in establishing both the existence and severity of the [Plaintiff's] impairment," 2012 WL 3104869, at *3, and are noticeably absent from the ALJ's discussion.

The Court also notes that the Plaintiff's primary care physician, Stephen Tharp, M.D., opined that the Plaintiff "has significant fibromyalgia that limits her ability to work." [Tr. 326]. The ALJ discounted the opinion, in part, because "fibromyalgia requires specific testing, which is lacking." [Tr. 24]. However, the "specific testing," *i.e.*, tender point testing, was in fact administered by the Plaintiff's rheumatologist and the Plaintiff was found to have at least 16 positive tender points upon examination. [Tr. 286].[3] Accordingly, the Court cannot make a substantial evidence finding where the ALJ has failed to acknowledge treatment notes by Dr. Lockwood or reconcile said treatment notes with the other evidence of record.

Based upon the foregoing, the Plaintiff's allegation of error in this regard is well-taken. The Court will recommend that this case be remanded to the ALJ to reevaluate the Plaintiff's claim consistent with SSR 12-2p.

**B. Evaluation of Opinion Evidence**

Because the Court has found that the Plaintiff's RFC is not supported by substantial evidence, the Court is unable to engage in meaningful review of this issue at this time. The Court will recommend, however, that the ALJ acquire additional medical evidence and/or opinions as

---

[3] While not necessarily lending further support to the analysis at hand, the Court notes the ALJ further contradicted himself when he continued to discount the Plaintiff's mental limitations caused by her fibromyalgia as opined by Dr. Tharp. Dr. Tharp found that the Plaintiff's fibromyalgia promoted disabling symptoms of anxiety and depression, which greatly limited her ability to carry out simple instructions and maintain a normal work routine without frequent breaks. [Tr. 24, 326]. The ALJ assigned "no significant weight" to the opinion because Dr. Tharp "is not a mental health professional." [Tr. 24]. Several paragraphs later, however, the ALJ relied on the same opinion to highlight the fact that Dr. Tharp found the Plaintiff's "memory, concentration, and social ability were not impaired." [Tr. 24, 323].

may be needed to fully develop and better address the functional limitations, if any, caused by the Plaintiff's fibromyalgia. The Court notes that more than a passing reference to Dr. Lockwood and his records, as well as consideration of seeking a formal opinion by him, would be instructive. Additionally, SSR 12-2p discusses the importance of a claimant's longitudinal information being made available to any medical source who conducts a consultative examination.

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[4] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **GRANTED in part** and the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **DENIED.** Upon remand, the Court **RECOMMENDS** that the ALJ: (1) reevaluate the Plaintiff's claim of fibromyalgia consistent with SSR 12-2p, (2) review and address Dr. Lockwood's medical records, and (3) consider acquiring additional medical evidence and/or opinions from Dr. Lockwood or others, if and as needed, to evaluate the functional limitations, if any, caused by the Plaintiff's fibromyalgia.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).